FILED ____ LODGED
____ RECEIVED

AUG 29 2011

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

R.D. and C.D.,

          Plaintiff,

v.

BOYS SCOUTS OF AMERICA, et al.,

          Defendant.

CASE NO. 10-cv-1006 RBL

ORDER GRANTING MOTION FOR PROTECTIVE ORDER

      This matter is before the Court on Defendant Boys Scouts of America's ("BSA") Motion for Protective Order (Dkt. # 56). The court has reviewed the materials for and against said motion and oral argument is not necessary for the court to decide the issue. For the reasons stated below, Defendant's motion is GRANTED, and discovery of Defendant's Ineligible Volunteer files, as requested in Request for Production No. 31, Plaintiffs' First Interrogatories and Requests for Production to Defendant Boy Scouts of American, may not be had.

      Plaintiffs allege that, long before plaintiffs' abuse, BSA knew that it had a problem with pedophiles and other sexual deviants infiltrating their ranks. In 1910, shortly after BSA was founded as a congressionally chartered corporation, BSA implemented an internal record

keeping system aimed at preventing scout leaders who were expelled for sexual deviance and other unsavory activities, like gambling and dishonesty. Originally, the system entailed placing a red sticker on the expelled or rejected man's registration card. Later, the system grew into a large database in which each flagged individual's name and suspected activity was logged and stored. This database became known as the Ineligible Volunteer Files ("I.V. files"). According to Plaintiffs, the I.V. files highlighted BSA's vulnerabilities, including pedophiles' technique for infiltrating the BSA organization and grooming victims. They also demonstrated biographical and behavioral characteristics shared by the pedophiles that had been discovered within the organization.

Plaintiffs seek production of existing I.V. files relating to allegations of child molestation. None of these documents concern Plaintiffs, the alleged offender at issue here, or the facts or claims of this case. Plaintiffs allege that they were abused over forty years ago by Gary Reese. Reese was a family friend who belonged to the same church congregation as Plaintiffs' family. He was allegedly involved with the church-sponsored scout group.

Plaintiffs' stated reason for seeking the I.V. files to show that BSA had generalized knowledge of sexual abuse. BSA's generalized knowledge of a risk of sexual molestation is unrelated to whether BSA owed a duty to Plaintiffs. Washington law requires evidence of knowledge of the individual abuser's proclivities, not merely general knowledge of an unspecified risk of abuse. Boy 1-6 v. Boy Scouts of America, 2011 U.S. Dist. LEXIS 53742, at *17 (W.D. Wash. May 19, 2011) ((Granting BSA's motion to dismiss because plaintiffs failed to allege that BSA knew or should have known that the individual scout leader who molested

plaintiffs were likely to do so.).[1] Plaintiffs proffer evidence that the LDS bishop was informed of the abuse and that he informed the BSA concerning Reese's alleged abuse of Plaintiffs. The specific evidence is relevant regarding the questions of duty and breach. However, the request of thousands of I.V. files (1000 files are already in the public domain) offers little probative value to what is known by the Plaintiffs about the notice to BSA about Gary Reese's abuse of Plaintiffs.

Plaintiffs want to cross-examine BSA witnesses concerning: knowledge of sexual predators of boys infiltrating the BSA; whether scouts are particularly susceptible to pedophiles; that BSA ejected thousands of pedophiles from its ranks of leadership in local scout troops; and whether BSA knew or should have known that if they advised parents of this statistical phenomenon, parents might well remove their boys from scouting, thus depriving BSA of millions of dollars of income. These questions can be asked without the time and expense of redacting names of victims and alleged abusers all to provide a predicate for cross-examination based on generalized knowledge of child abuse. Nothing in these I.V. files would inform the decision of Plaintiffs' parents to put their boys into scouts under the mentorship of a family friend and fellow congregant at church.

The Washington Supreme Court case of T.S. v. BSA, 157 Wn.2d 416, 418 (2006) does not decide the issue here. The Court considered the constitutional right to privacy under Article I, section 7 of the Washington State Constitution and whether the trial court should have applied the balancing test of Snedegar v. Hodderson, 114 Wn.2d 153, 158 (1990). The issue here is whether Plaintiffs are entitled to 60 years of I.V. files from across the nation.

---

[1] The description of the I.V. files is compiled from information from this case and from Boy 1-6 v. BSA, 2011 U.S. Dist. LEXIS 53742 (W.D. Wash., May 19, 2011.)

1 | Production of 60 years of I.V. files would impose a costly, time-consuming burden on
2 | BSA. Production of these files would garner little or no relevant evidence and the burden of
3 | expense of the discovery outweighs its likely benefit.
4 | The Motion for Protective Order (ECF No. 56) is GRANTED and the discovery may not
5 | be had.
6 | IT IS SO ORDERED.
7 | Dated this 29th day of August, 2011.

_____
RONALD B. LEIGHTON
United States District Court Judge