THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| R.D. and C.D.,<br><br>                Plaintiffs,<br><br>    v.<br><br>BOY SCOUTS OF AMERICA, a congressionally chartered corporation, authorized to do business in Washington; RAINIER COUNCIL, BOY SCOUTS OF AMERICA, a Washington public benefit corporation; CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a corporation sole; and the TACOMA STAKE, NINTH OR LAKEWOOD WARD OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Washington corporation,<br><br>                Defendants. | No. 10-cv-1006-RBL<br><br>**DEFENDANT BOY SCOUTS OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**<br><br>**NOTE ON MOTION CALENDAR:**<br>Friday, December 9, 2011<br><br>**ORAL ARGUMENT REQUESTED** |

## I. INTRODUCTION

Though the Plaintiffs' complaint suffers from many defects, summary judgment, dismissing all claims asserted by Plaintiffs C.D. and R.D. against Defendant Boy Scouts of America ("BSA"), is compelled by the utter lack of prior notice of the alleged abuser's proclivities, to BSA or, for that matter, to <u>anyone</u> in a position to prevent the abuse.

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 1
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiffs claim that a close family friend, Gary Reese, sexually abused them as children, in 1967 and, or perhaps, 1968, over 40 years ago. Reese belonged to the same church congregation as Plaintiffs' family, and may have been involved with the church-sponsored scout troop. Plaintiffs say that they repressed their memories of the abuse until 2010, after their mother died.

Plaintiffs would charge BSA with responsibility for Reese's abuse. BSA had no notice that Reese posed <u>any</u> risk to children. <u>No Ineligible Volunteer file exists regarding Reese</u>. Plaintiffs admit that they never told BSA about the abuse. Their own expert witness admits that, in his opinion, <u>no</u> evidence exists of BSA's actual notice of Reese's proclivities. It is the law in Washington – and the law of the case – that no duty exists under Washington law to protect another from a third party's criminal acts, absent proof that the defendant had prior, specific knowledge of the risk posed by the third party. Dkt. no. 86 at 2 (*R.D. v. BSA*, 2011 U.S. Dist. LEXIS 96760, *3 (W.D. Wash. Aug. 29, 2011)) (granting BSA's motion for protective order regarding Ineligible Volunteer files); *see also Boy 7 v. Boy Scouts of America*, 2011 U.S. Dist. LEXIS 110681, at *3 (E.D. Wash., Sept. 28, 2011) (granting BSA's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismissing plaintiff's amended complaint <u>with prejudice</u> because the plaintiff had not alleged "any facts that would establish that it was reasonably foreseeable that this particular Scout Leader would abuse Plaintiff"). Plaintiffs' complete failure of proof concerning this essential element is fatal to their case against BSA.

## II.    STATEMENT OF FACTS

**A.    Structure of the Scouting Movement.**

The Scouting movement consists of three "layers" of distinct, and disparate, legal entities: BSA, councils, and local community organizations. Gary Schoener, Plaintiffs'

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 2
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

expert witness on the standard of care, acknowledged the distinct, separate nature of each of these "layers":

> Q: You understand that the local council is separately incorporated from the national [BSA]?"
>
> A: Yes.
>
> Q: And you understand that the sponsoring organizations or the troops are separate entities from the local council?
>
> A: Yes.

Deposition of Gary Schoener ("Schoener Dep.") at 55.[1]

The Scouting movement's first "layer" is BSA, a Congressionally-chartered corporation. Deposition of James Terry ("Terry Dep.") at 37.[2] BSA's federal charter states that its purpose is to make its educational scouting program available for use by <u>other</u> organizations. *Id.* at 37 and 90; *see also* 36 U.S.C. § 30902 ("The purposes of [BSA] are to promote, <u>through organization, and cooperation with other agencies</u>, the ability of boys to do things for themselves and others . . ." (emphasis added)). Accordingly, the Scouting program is offered by BSA to local organizations for use as a part of their own youth programs. Terry Dep. at 38-39. In the 1960's, BSA was headquartered in North Brunswick, New Jersey. *Id.* at 49.

The Scouting movement's second "layer" is made up of individual councils (like the Pacific Harbors Council), which are separate nonprofit or charitable corporations that promote the Scouting program to other organizations operating within a set geographic area. Terry Dep. at 39-40; Declaration of Timothy L. Garber, Scout Executive for the Pacific Harbors

---

[1] Referenced deposition pages are attached to the Declaration of Barbara Kastama submitted herewith ("Kastama Decl.") as Exhibit A.

[2] Mr. Terry is the Assistant Chief Scout Executive and Chief Financial Officer for BSA. Terry Dep. at 8.

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 3
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Council ("Garber Decl."), ¶ 2; *see also* Schoener Dep. at 55 ("the local council is separately incorporated from the national").

The third "layer" is composed of independent community organizations, Terry Dep. at 38-39, including churches, schools and civic organizations. *Id.* at 41. These organizations apply to the council in their geographic area for a BSA charter. *Id.* at 39, 42. They sponsor, own, and operate their scouting units, which may be Cub Scout packs, Scout troops, and/or Explorer posts. *Id.* at 38-39; Garber Decl., ¶ 2. It is these organizations (not BSA nor the councils) that select and supervise the leaders for their scouting units. Terry Dep. at 39; Schoener Dep. at 90-91 (stating that "neither BSA nor the local councils select the leaders of Scouting units). Each chartered organization has a "chartered organization representative" who "was basically the manager of Scouting in a chartering organization, such as a church, who would be responsible for the operation of the Cub Scout pack and the Boy Scout troop, and the Explorer post at the time." Terry Dep. at 31.

**B.    The LDS Church and Scouting.**

One such local community organization is the LDS Tacoma 5th ward, which chartered, organized and ran three scouting units in the 1960's: Cub Pack 3190, Troop 190, and Explorer Post 2190.[3] Garber Decl., ¶ 3 and Exs. A and B (pack and post rosters). Plaintiffs R.D. and C.D., brothers, belonged to the LDS Tacoma 5th ward and participated in its scouting units. *See, e.g.,* C.D. Dep. at 8-9, 16.

The LDS Church has adopted the Scouting program as "part of the activity phase of its Aaronic Priesthood and Primary" for boys ages 8 to 18. *See Relationship Between the Church of Jesus Christ of Latter-Day Saints and the Boy Scouts of America, An Adminstrative Manual*

---

[3] "A 'ward' is an LDS Church congregation with 300-600 members within a geographic boundary .... There is a bishop for each ward who has ecclesiastical authority over the members." *Jane Doe v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 141 Wn. App. 407, 455 n.3, 167 P.3d 1193 (2007).

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 4
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

*Designed for Use by Stake, Ward, Mission and Council Leaders – Not a Scout Leader's Program Manual*, at 21(Salt Lake City, 1976) (the "*LDS Administrative Manual*"; attached to the Kastama Decl. as Ex. B) at 2. In each ward, the bishopric – composed of the bishop and his first and second counselors – supervise the ward scouting unit leaders (such as Cubmasters, Scoutmasters, and Explorer Advisors), and is responsible for the scouting units themselves. *LDS Administrative Manual*, at 10. Ward bishops, in turn, are supervised by their Stake President, who (together with his councilors) is charged with responsibility for the stake's scouting units.[4] *Id.* at 6. "The responsibility for pack, troop, or post-sponsored activities rests <u>exclusively</u> with the president of the stake and the bishop of the ward sponsoring the Scouting unit." *Id.* at 18 (emphasis added).

The ward bishopric selects scouting unit leaders by "calling" worthy candidates to those positions. Deposition of Roger van Komen ("van Komen Dep.") at 20; Deposition of C.D. ("C.D. Dep.") at 190-191. To "call" a new Scout leader, the bishopric first discusses potential candidates among themselves and with other ward leaders, interviews candidates, and issues a calling. van Komen Dep. at 20, 28. The called leader is presented to the congregation for a sustaining vote. *Id.* at 20. The bishopric is responsible for ensuring registration of called and sustained leaders with BSA, as well as seeing that each is trained. *LDS Administrative Manual*, at 3 and 10.

Registration requires completion of a BSA application form, which is sent by the chartered organization to the local council, which forwards it to BSA. Terry Dep. at 42. As it does with all registration applications, BSA compares the name on the application with names

---

[4] The LDS Administrative Manual describes the three-layered structure of the Scouting Movement and points out that the councils and BSA are "the support service system" for the chartered organizations using the BSA program of Cub Scouting, Scouting and Exploring. Kastama Decl., Ex. B at 21. A community organization issued a charter "uses the Scouting program under its own leadership to serve the youth and families for which it has a concern and which will help it accomplish its objectives." *Id.*

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION FOR SUMMARY JUDGMENT – 5
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

listed in its Ineligible Volunteer files. *Id.* at 42. These files contain information reported to BSA by scout councils and local community organizations identifying individuals who may not meet BSA's membership standards. *Id.* at 16-17. BSA will not accept registration applications from a person whose name appears in the files, *id.* at 34-35, a fact known to LDS. van Komen Dep. at 140.

### C. Gary Reese's Alleged Abuse of R.D. and C.D.

In the 1960's, Reese, like the Plaintiffs, belonged to the LDS Tacoma 5th ward. C.D. Dep. at 8-9. Plaintiffs' mother, Alberta, was a close friend of both Reese and his mother, Edith. Deposition of R.D. ("R.D. Dep.") at 114; C.D. Dep. at 188. Mark Dickson, Plaintiffs' older brother, was also a close friend with Reese. R.D. Dep. at 165; *see also* C.D. Dep. at 69 ("Q: Did you have any understanding that he [Mark] had a positive relationship with Mr. Reese in his – A. Yeah, I thought they were best friends").

#### 1. Plaintiff R.D.

Plaintiff R.D. was born in August 1952. R.D. Dep. at 82. In 1967, R.D. was a member of the ward Explorer post. *Id.* at 60; Kastama Decl., Ex. C (R.D.'s Amended Responses to Defendant Boy Scouts of America's First Interrogatories and Requests for Production of Documents, Interrogatory No. 5). R.D. could not recall the names of any of his Scoutmasters. R.D. Dep. at 159. He does not know whether Reese was a leader in a ward unit, and does not remember Reese being called to be a leader. *Id.* at 85-86 ("I never knew whether he was a counselor or a Scoutmaster or a Scout leader or what he was") and 159.

R.D. alleges one incident of fondling by Reese, which occurred when he was 14 to 16 years old (1966 to 1968). R.D. was injured in the testicles while wrestling with other scouts in Reese's backyard. R.D. Dep. at 73-74. He says that Reese took him to his bedroom, and massaged cream on R.D.'s testicles and penis. *Id.* at 74-75. R.D. became afraid, and ran out of the room. *Id.* at 75-76; 167.

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 6
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Two weeks later, R.D. told his mother about the incident. R.D. Dep. at 93-94. His mother called the bishop, and, according to R.D., she and R.D. drove to the church to meet with him. *Id.* at 94. At the meeting, his mother told the bishop about the incident. *Id.* R.D. claims that the bishop told him that the church knew about Reese and was taking care of it:

> A: And I don't want any part of talking about it. But the bishop asked me, you know, is this what happened. And I go, yeah. And he goes, you know, calm down, calm down. He says, we already know about Gary and we talked to the – whatever the big Scout leader is – and we're dealing with this; it's not – you know, it's not your fault, but we're dealing with this and Gary's being disciplined, he's – you know, we're – the church and the Boy Scouts are taking care of it. What did she call it? The Scout master, whatever. And you don't – we'll take note of it and that's all you need to do; we got it.

R.D. Dep. at 94-95. R.D. could not remember who the bishop stated that he had spoken to about Reese:

> Q. When you were talking about your meeting with your mother and the bishop –
>
> A. Yes.
>
> Q. – you said that the bishop – I wasn't clear on what the bishop said about how the situation was being worked out. And I thought I heard you mention the Scout master. What do you remember the bishop saying about that?
>
> A. I believe what he said was that there was already some sort of issue on the table with Gary Reese and that they had talked – the bishopric and the Scoutmaster or the Scout – I'm not sure if he said the Scout leadership or the Scout master, but they had already discussed this and that there had already been steps taken to deal with Gary Reese.

R.D. Dep. at 177-78.[5]

R.D. claims that, a week later, he had blocked out all memory of Reese's abuse and the meeting with the ward bishop and his mother. R.D. Dep. at 113-14. His mother died in October 2009, some 40 years later. Deposition of Mark Dickson, at 19. The following

---

[5] R.D.'s testimony regarding what the bishop <u>told</u> him about what an unidentified person <u>told</u> the bishop about conversations that that person had had <u>with other</u> unidentified persons, is inadmissible as vague, speculative, and inadmissible triple hearsay. *See* discussion *infra* at 12-13.

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 7
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Mother's Day, in April 2010, R.D. claims that he recovered his memories of the abuse. R.D. Dep. at 117. R.D.'s brothers, Mark and C.D., came to R.D.'s house. *Id.* at 118. He testified that when Mark referred to Reese as "queer," R.D. suddenly remembered that Reese had molested him. *Id.* C.D. then stated that Reese might have abused him as well. *Id.* This was the first time R.D. learned that Reese might have abused C.D. *Id.* R.D. did not know whether his experience predated his brother's, and testified that "[i]n fact, there's a possibility that they overlap." *Id.* at 157.

### 2. Plaintiff C.D.

Plaintiff C.D. was born in June, 1956. Kastama Decl., Ex. D (C.D.'s Response to COP's First Discovery Requests, Interrogatory No. 1). In 1966 and 1967, C.D. belonged to the ward Cub Scout pack. C.D. Dep. at 30-31; Garber Decl., Ex. A. In 1967, his mother, Alberta Dickson Clarno, was his den mother. *Id.* C.D. could not recall if Reese had a formal leadership role in the ward pack. C.D. Dep. at 187-88. Reese is not listed in the Pack 3190 rosters in any capacity. Garber Decl., Ex. A. Like his brother, C.D. could not recall whether Reese was ever called to be a Scoutmaster for the ward troop. C.D. Dep. at 191.

C.D. alleges that Reese abused him several times, mostly when he was in fifth grade and a Cub Scout. C.D. Dep. at 15-17. The first two incidents involved Reese fondling him outside his clothing during a Cub Scout meeting, and in Reese's car, when Reese was driving C.D. and other Cub Scouts to the LDS Stakehouse in Tacoma. *Id.* at 17-19. C.D. also alleges an incident of oral sex during a Cub Scout hike, and an incident of anal sex during another hike. *Id.* at 27-29, 31-34. He describes a fondling incident at Reese's home in 1966, while he was in the fifth grade. *Id.* at 38-39. In another incident, Reese took C.D. and another boy to his house and had the boy engage in anal sex with C.D. *Id.* at 39-40.

When C.D. turned 12 in June 1968 he joined the ward Scout troop. C.D. Dep. at 199-200. C.D. claims that Reese anally raped him behind the gymnasium stage during auditions

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION FOR SUMMARY JUDGMENT – 8
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

for a ward "road show." *Id.* at 21-22; *see also* 23 ("Q: As I recall, you've told me that you were in Boy Scouts at that time? A: Yeah."). Sometime thereafter, C.D. told his mother about Reese's abuse. C.D. Dep. at 51-52, 60-61. She told C.D. that she was going to speak to the bishop. *Id.* at 62, 204. The next day, the bishop took C.D. out of a Scout meeting for an interview. *Id.* at 52, 204. C.D. told him that he had been abused by Reese. *Id.* C.D. claims that the bishop told him that the problem was being addressed. *Id.* at 54. Upon returning to the Scout meeting after this conversation with the bishop, Reese allegedly took C.D. to the baptismal area and raped him on the baptismal font. *Id.* at 44, 57.

When C.D. reached 17 years of age, he, too, forgot Reese's abuse. C.D. Dep. at 10. He, too, claims to have recovered his memories of the abuse some 40 years later. *Id.* at 10, 99. Like R.D., his memories were triggered by his brother Mark's reference to Reese at the brothers' meeting on Mother's Day, 2010. *Id.* at 99.

**D. BSA Had No Knowledge That Reese Posed Any Risk to Scouts.**

BSA did not know and could not have known that Reese would abuse Plaintiffs. Plaintiffs admit that they never contacted BSA or the Council regarding Reese at any time prior to the filing of this lawsuit more than 40 years after the fact:

Q: Have you talked to anyone at the Boy Scouts of America about the abuse?

A: No.

C.D. Dep. at 192.

Q: And you never – have never contacted anyone at the Boy Scouts –

A: Never.

R.D. Dep. at 178.

Plaintiffs admit that they do not know if their mother ever contacted BSA. C.D. Dep. at 191; R.D. Dep. at 178. BSA has no Ineligible Volunteer file regarding Reese. *See* Declaration of Martin Walsh in Support of Boy Scouts of America's Motion for Summary

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 9
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Judgment ("Walsh Decl."), ¶ 2; and Plaintiffs' own expert on the standard of care, Mr. Schoener, testified that <u>no evidence existed of BSA's actual notice</u>:

> Q: Before we get into the actual parsing of the report, in your review did you find any evidence that anyone at the Boy Scouts of America had actual notice of any improper conduct by Gary Reese?
>
> A: No, I did not.
>
> Q: And, similarly, did you find any evidence in your review that anyone at the local council, the Pacific Harbors Council, had any actual notice of improper conduct by Gary Reese?
>
> A: No, I did not.

Schoener Dep. at 65.

### E. Procedural History.

Plaintiffs assert five claims against BSA: negligence and breach of fiduciary duty; negligent infliction of emotional distress; fraud/concealment of facts; estoppel and fraudulent concealment; and negligent supervision/retention and hiring. Dkt. no. 26 (Second Amended Complaint) at pp. 9-20.

Discovery closed on October 3, 2011. Dkt. no. 90. The deadline for filing dispositive motions is November 16, 2011. *Id.* Trial is scheduled to begin on January 30, 2012. *Id.*

### III. ARGUMENT

### A. STANDARDS FOR SUMMARY JUDGMENT.

Fed. R. Civ. P. 56(c) mandates entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, the nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex* at 324 (*quoting* Fed. R. Civ. P. 56(e)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c),

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 10
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *Federal Trade Commission v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). A non-movant also cannot rely upon inadmissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). While all "justifiable inferences" are drawn in the non-movant's favor, inferences "are not drawn out of the air" and it is the non-movant's obligation to produce a factual predicate from which inferences may be justifiably drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

**B. AS A MATTER OF LAW, PLAINTIFFS CANNOT ESTABLISH THAT BSA OWED A DUTY TO PREVENT REESE'S ALLEGED CRIMINAL ACTS.**

**1. No Duty Exists Because BSA Did Not Have Prior Knowledge That Reese Posed Any Risk to Children.**

It is the law in Washington – and the law of the case – that no duty exists under Washington law to protect another against a third party's criminal acts, absent proof that the defendant had prior, specific knowledge of the risk posed by the third party.[6] Dkt. no. 86 at 2 (*R.D. v. BSA*, 2011 U.S. Dist. LEXIS 9676, *3 (W.D. Wash. Aug. 29, 2011)) (granting BSA's motion for protective order regarding Ineligible Volunteer files). Plaintiffs concede that, as a

---

[6] Under Washington law, there is no duty to prevent a third party from causing injury to another. *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 227, 802 P.2d 1360 (1991). A narrow exception to this rule exists if:

(1) the defendant is in a "special relationship" with either the intentional actor or that actor's victim,
(2) the defendant has or should have prior knowledge of the risk posed by the intentional actor, <u>and</u>
(3) a causal connection exists between the harm and the fact of the intentional actor's position with the defendant.

See *C.J.C. v. Corporation of the Catholic Bishop*, 138 Wn.2d 699, 724, 985 P.2d 262 (1999) (consolidated negligence claims brought against church entities for allegedly failing to prevent intentional abuse by church leaders or church employees).

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 11
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

result, they "must establish that BSA had actual knowledge of the individual abuser's proclivities, i.e., that Gary Reese was a child molester and posed a risk to Plaintiffs."[7] Dkt. no. 125 at 1 (Plaintiffs' Motion to Exclude Testimony of BSA's Experts McCrary and Pearson).

As a matter of law, Plaintiffs' claims against BSA should be dismissed because <u>no</u> evidence exists that BSA had prior knowledge that Reese posed a risk to boys. No Ineligible Volunteer file exists regarding Reese, Walsh Decl., ¶ 2, and, despite a massive search, Plaintiffs can identify no other source of information to BSA or any other party regarding Reese's activities. Plaintiffs admit that <u>they</u> never told BSA of Reese's abuse, and they do not know if their mother ever did. R.D. Dep. at 178; C.D. Dep. at 192. R.D.'s testimony, regarding what the deceased bishop told him 40 years ago regarding what an unidentified person told the bishop about conversations he had had regarding Reese with other unidentified persons, is inadmissible triple hearsay. *See, e.g., Espinoza v. County of Fresno*, 2011 U.S. Dist. LEXIS 85401 at *18-19 (E.D. Cal. Aug. 2, 2011) (rejecting plaintiff's attempt to create a factual dispute based only on a "vague inadmissible triple-hearsay statement," and granting summary judgment); *see also Maestas v. Segura*, 416 F.3d 1182, 1190 n.9 (10th Cir. 2005)

---

[7] Failure to prove this essential element of prior, specific knowledge is fatal to plaintiffs' negligence claims. In *Boy 7 v. Boy Scouts of America*, 2011 U.S. Dist. LEXIS 110681, at *3 (E.D. Wash., Sept. 28, 2011), Judge Whaley dismissed plaintiff's amended complaint <u>with</u> prejudice because plaintiff failed to allege "any facts that would establish that it was reasonably foreseeable that this particular Scout Leader would abuse Plaintiff." In *Boy 1, et al. v. BSA*, 2011 U.S. Dist. LEXIS 53742 at *17-18, Judge Martinez dismissed plaintiffs' complaint because the plaintiffs failed to plead an essential element of their claim against BSA: that BSA knew or had reason to know that Plaintiffs' perpetrator had previously abused other scouts or children or made inappropriate advances towards them. *Id.* at *17. In *Jane Doe v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 141 Wn. App. 407, 445, 167 P.3d 1193 (2007), the Washington Court of Appeals affirmed summary judgment dismissing a negligence claim against the LDS church, ruling that "unlike the church in *C.J.C*, [it] had not been warned that [the perpetrator] had previously abused children or made inappropriate advances toward them." *See also C.J.C.*, 138 Wn.2d at 725-26 (defendant church had a duty to prevent intentional harm because it had special relationships with both the perpetrator and the victims, <u>and</u> prior knowledge that the perpetrator posed a risk to children).

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 12
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

(affirming summary judgment dismissing retaliation claim; "[t]he only evidence [plaintiff] Hort could muster was that an unidentified person told city employees Sam Garcia and Frank Castillo, who in turn told city employee Frank Ortega, who in turn told Hort, that Hort had better support Chavez. Such triple hearsay would not be admissible at trial; nor is it admissible on summary judgment"). Such testimony (besides being textbook inadmissible multiple hearsay) is inconclusive, speculative, and unreliable.[8]

Like the plaintiffs in *Jane Doe*, *Boy 1* and *Boy 7*, Plaintiffs cannot point to a single specific fact that shows that BSA was warned that Reese had abused children or made inappropriate advances towards them. This is fatal to all of Plaintiffs' claims.[9]

### 2. As a Matter of Law, Neither Reese, the Local Bishop nor Plaintiffs' Mother Were BSA's Agents.

Lacking actual evidence of BSA's prior, specific notice, Plaintiffs claim that Gary Reese, the local bishop, and their own mother were its agents. *See* Kastama Decl., Exs. C and E (R.D. and C.D.'s, respectively, Amended Responses to Defendant Boy Scouts of America's

---

[8] Plaintiffs' expert Gary Schoener acknowledged this unreliability, admitting that he did not rely upon R.D.'s testimony because "that kind of statement can also be just a general reassuring type statement." Schoener Dep. at 153-54.

[9] Plaintiffs assert no less than three duplicative forms of negligence, claiming that BSA knew about Reese's proclivities and failed nonetheless to protect Plaintiffs: "negligence and breach of fiduciary duty" (Cause I); "negligent infliction of emotional distress" (Cause II); and "negligent supervision/retention/hiring (Cause V). Dkt. no. 26 at pp. 9-20 (Second Amended Complaint). All of these claims fail because there is no evidence of BSA's prior, specific knowledge. Plaintiffs' third claim, for "fraud: concealment of facts" also alleges that BSA had prior knowledge of Reese's proclivities, *see, e.g*, Dkt. no. 26, ¶¶ 49, 50, and therefore fails for the same reason. *Chen v. State*, 86 Wn. App. 183, 188, 937 P.2d 612 (1997) ("To establish fraud, the plaintiff must demonstrate: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) speaker's knowledge of its falsity; (5) speaker's intention that it shall be acted upon by the plaintiff; (6) plaintiff's ignorance of falsity; (7) reliance; (8) right to rely; and (9) damages"; granting motion for summary judgment on fraud claim). Plaintiffs' fourth claim, for "estoppel and fraudulent concealment" does not state a claim under Washington law. *J.C. v. Soc'y of Jesus*, 457 F. Supp. 2d 1201, 1203 (W.D. Wash. 2006) (noting in sexual abuse action against a religious order that there is no basis for asserting equitable estoppel or fraudulent concealment as an independent cause of action").

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 13
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

First Interrogatories and Requests for Production of Documents, Interrogatory No. 7). These startling claims do not save their case.

First, "agency does not come into existence out of thin air." *Matsumura v. Eilert*, 74 Wn.2d 362, 368, 444 P.2d 806 (1968). Agency requires proof that <u>both</u> parties consent to the relationship and that the principal exercises control over the agent. *Id.*; *Restatement (Second) of Agency* § 1 (1958) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act").

Washington courts recognize, as do jurisdictions nationwide, that BSA does <u>not</u> control the local chartered organizations that sponsor, organize and run scouting units. *Mauch v. Kissling*, 56 Wn. App. 312, 783 P.2d 601 (1989). The local chartered organizations – not BSA – select and supervise the leaders of their respective scouting units. In *Mauch*, an airplane piloted by a Scoutmaster and carrying a Scout crashed, killing both. *Id.* at 314. The Scout's mother sued BSA alleging that the Scoutmaster was its agent. *Id.* at 313. After the trial court granted summary judgment to BSA, the appellate court affirmed, ruling that apparent authority can only be inferred from the acts of the principal, not from the acts of the agent, and that there must be evidence that the principal had <u>knowledge of the acts</u> committed by its agent. *Id.* at 316. The court then cited a similar California case that discussed the structure of BSA and the local councils:

> The national organization and the local council furnish a program, train leaders in boys' work and encourage individuals in the various communities to carry on certain work of local benefit, but these organizations do not directly carry out these activities. The local councils assist along these lines but the actual work in the respective communities is performed by local scoutmasters under the direction of local troop committees. <u>A scoutmaster is appointed on the recommendation of this troop committee and not on the recommendation of the local council, and he is responsible solely to this local committee. The troop committee and the scoutmaster are volunteer workers whose services are given to the community rather than to the organization which is, in practical effect, merely an adviser rather than an employer.</u>

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 14
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

*Id.* at 317 (emphasis added) (citing *Young v. Boy Scouts of Am.*, 51 P.2d 191, 194 (Cal. Ct. App. 1935)). The court then held:

> There is no evidence nor is there a legal basis on which to hold the BSA or the Fort Simcoe Area Council liable for the actions of their scoutmaster, Mr. Kissling, on a theory of ostensible agency. Ms. Mauch has not presented evidence that either BSA or the Fort Simcoe Area Council consented to or had control of Mr. Kissling's actions during the overflight. Nor has she presented evidence she relied on their actions or statements in deciding to allow her son to ride with Mr. Kissling. . . . Thus, there is no evidence of an act by the principal which would lead a reasonable person to believe its agent was acting with apparent authority.

*Id.* at 317. *See also Gordon v. Boy Scouts of Am.*, 2009 Wash. App. LEXIS 3141 at *4 (Wash. Ct. App. Dec. 22, 2009) (affirming summary judgment to BSA and local council in personal injury action because no agency relationship existed; ruling that the evidence presented was similar to that in *Mauch*: "The national scouting organization charters regional organizations, which in turn charter local organizations. The local groups organize and control themselves, selecting leaders and making decisions on activities for the scouts. They do not act at the direction of regional or national scout organizations").[10]

As in *Mauch* and *Gordon*, there is no evidence that BSA authorized Reese (or Mrs. Cornell, or the local bishop) to act on its behalf subject to its control, nor is there evidence that any of the three agreed to serve as BSA's agents. Ward members cannot be transformed

---

[10] *Mauch* is consistent with decisions nationwide that recognize that BSA does not control the independent entities that use the Scouting program to sponsor troops. *See, e.g., Wilson v. United States*, 989 F.2d 953, 959 (8th Cir. 1993) (no evidence "that BSA manifested that it had direct control over the specific activities of individual troops or that it had a duty to control, supervise or train volunteer leaders," and discussing *Mauch*); *Mitchell v. Hess*, 2010 U.S. Dist. LEXIS 27302, *16-17 (E.D. Wis. Mar. 23, 2010) (recognizing that "most other courts" "have concluded that the BSA, the Council, and the community organizations that own and operate the individual troops are distinct corporate entities and that Councils do not have a duty to monitor or supervise individual Scouts or their leaders"; collecting cases and citing *Mauch*); and *Glover v. Boy Scouts of Am.*, 923 P.2d 1383, 1388-89 (Utah 1996) ("We note that our decision today is in accord with the vast majority of jurisdictions which have held as a matter of law that under the organizational structure described above, neither the BSA nor a local council has a right to control the conduct of scoutmasters in connection with troop activities that are not directly sponsored or supervised by the BSA or a local council").

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 15
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

into BSA's "agents" by virtue of their involvement in the ward's scouting units. The LDS Tacoma 5th ward, and the LDS Church, are entities separate and independent from BSA. The ward bishop, and above him, the stake president, are exclusively responsible for scouting units in the ward and stake. *See, e.g.,* Kastama Decl., Ex. B at 6, 10, 18. Any involvement by Plaintiff's mother and Reese in the ward scouting units, therefore, was supervised by the ward bishop, who in turn, answered to the stake president.

Second, as a matter of law, Reese cannot be BSA's agent for purposes of imputing knowledge to BSA of abuse. Washington courts have consistently held that acts taken in pursuit of "personal sexual gratification" fall outside the scope of employment. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 54, 59 P.3d 611 (2002) ("Similarly, this court has also determined that, where an employee's acts are directed toward personal sexual gratification, the employee's conduct falls outside the scope of his or her employment"). Plaintiffs' argument that Reese's knowledge of the abuse can be imputed to BSA similarly fails on this ground. *See Hendricks v. Lake*, 12 Wn. App. 15, 22, 528 P.2d 491 (1974) (an agent's knowledge is not imputable to principal where the agent's knowledge is acquired outside of scope of his duties or when he is pursuing his personal objectives).

Third, Plaintiffs' attempt to impute knowledge to BSA based on their disclosures to their mother and the bishop also fails because Plaintiffs admit that the disclosures post-date the abuse.[11] C.D. Dep. at 51-52, 60-61; R.D. Dep. at 93-94. After-acquired knowledge of the so-called "agents" does not raise a material issue of fact as to whether BSA had knowledge prior to the abuse of the risk posed by Reese. Nor can Plaintiffs impute their mother's

---

[11] The only abuse that may have occurred after the disclosure was Reese's alleged rape of C.D., which occurred immediately after C.D. left the bishop's office after telling him of the abuse. C.D. Dep. at 43-44. Plaintiff's expert Gary Schoener testified that "it's not completely clear that what happened allegedly that night afterwards could have been prevented because I – I don't hold that it's clear that the bishop had some immediate way to act." Schoener Dep. at 111.

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 16
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

knowledge to BSA based upon her position as den mother. She was not a den mother at the time of the disclosures. Plaintiffs' mother was C.D.'s den mother when he was a Cub Scout. C.D. Dep. at 30-31. The ward pack rosters identify Mrs. Cornell as a den mother for one year only, from February 1967 to February 1968. Garber Decl., Ex. A. C.D. admitted, however, that he did not disclose the abuse until <u>after</u> he turned 12 years old in June 1968 and joined the Scout troop. C.D. Dep. at 51, 200. His mother was not, and could not have been, his den mother at the time of the subsequent disclosure.

Plaintiffs' meritless assertion of agency underscores the fact that Plaintiffs lack any evidence that BSA knew that Reese posed a risk to boys, prior to the alleged abuse here. As a matter of law, neither Reese, the bishop nor Plaintiffs' mother were "agents" of BSA.

## IV.    CONCLUSION

Plaintiffs cannot point to any evidence to establish the existence of an essential element of their case: that BSA had prior, specific knowledge that the alleged perpetrator here, Gary Reese, posed a risk to boys. For the foregoing reasons, BSA respectfully requests that the Court grant this Motion for Summary Judgment and dismiss all of Plaintiffs' claims with prejudice.

DATED this 16th day of November, 2011.

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP


s/ Barbara Kastama
Kelly P. Corr, WSBA No. 555
William R. Squires III, WSBA No. 4976
Barbara Kastama, WSBA No. 16789
Attorneys for Defendant Boy Scouts of America

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT – 17
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kevin P. Sullivan
Sullivan & Thoreson
701 Fifth Avenue, Suite 4600
Seattle, WA 98104
ksullivan@sullthor.com

Thomas N. Petersen
Black, Chapman, Webber, Stevens & Petersen
221 W. Stewart Ave., #209
Medford, OR 97501-3609
litigation@blackchapman.com

G. Perrin Walker
Vandeberg Johnson & Gandara, LLP
1201 Pacific Avenue, Suite 1900
P.O. Box 1315
Tacoma, WA 98401-1315
Pwalker@vjglaw.com

Charles C. Gordon
Jeffrey I. Tilden
Michael Rosenberger
Gordon Tilden Thomas & Cordell LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
cgordon@gordontilden.com
jtilden@gordontilden.com
mrosenberger@gordontilden.com

Francis S. Floyd
Tom Nedderman
Floyd, Pflueger & Ringer, P.S.
200 W. Thomas Street, Suite 500
Seattle, WA 98119-4296
ffloyd@floyd-pflueger.com
tnedderman@floyd-pflueger.com

s/ Barbara Kastama
Barbara Kastama, WSBA No. 16789
CORR CRONIN MICHELSON BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Telephone: (206) 625-8600
Fax: (206) 625-0900
e-mail: bkastama@corrcronin.com

DEFENDANT BOY SCOUTS OF AMERICA'S MOTION FOR SUMMARY JUDGMENT – 18
No. 10-cv-1006-RBL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

619 00006 lk114005